IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
April 12, 2005 Session

## STATE OF TENNESSEE. v. ROGER KNOBLOCK

**Direct Appeal from the Criminal Court for Knox County**
**No. 74167      Mary Beth Leibowitz, Judge**

---

**No. E2004-01961-CCA-R3-CD   Filed August 16, 2005**

---

Defendant, Roger Knoblock, was convicted, following a jury trial, of aggravated sexual battery. On appeal, he argues that the trial court erred by allowing evidence of a prior conviction for aggravated sexual battery to be introduced during Defendant's testimony on cross-examination. After a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3, Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT E. WEDEMEYER, JJ., joined.

H. Gene Bell, Knoxville, Tennessee, for the appellant, Roger Knoblock.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Randall E. Nichols, District Attorney General; Kevin J. Allen, Assistant District Attorney General, and Jim Bush, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

### I. Factual Background

The Knox County Grand Jury returned an indictment against Defendant, charging him with aggravated sexual battery, a Class B felony. The indictment alleged that Defendant "did unlawfully and intentionally have sexual contact with A.M., a child less than thirteen (13) years of age." Prior to trial, the State filed written notice of its intent to use Defendant's prior conviction for aggravated sexual battery at trial. Defendant filed a motion asking the court to exclude evidence of the prior conviction. Following a hearing, the trial court stated it was inclined to allow the State to make inquiry regarding the prior conviction if Defendant testified. However, the court also stated that it "would like to revisit [the] issue at trial and perhaps revisit [the] issue at the close of the State's proof."

At trial, the victim, A.M., testified that during the summer between the third and fourth grades, when she was nine years old, she lived next door to Defendant. At the time, she lived with her mother, step-father, four-year-old sister, and baby brother. She and her sister would often go next-door to Defendant's house. Sometimes his wife was there, but sometimes she was not. The victim testified that Defendant told her about another girl, named Karen, and that he and Karen had played a game called "truth or dare." He told the victim that during the game, he had showed Karen his penis and that Karen had shown him "her privates." He then asked the victim to play truth or dare with him and taught her how to play. During the game, Defendant would ask to touch the victim in "certain spots." For example, on one occasion, while the two were in Defendant's garage, Defendant dared the victim to let him touch her breasts:

[PROSECUTOR]:      [W]hat would you say when he asked to touch you in certain spots?

[VICTIM]:      I said, "Sure."

[PROSECUTOR]:      Okay. And where did he touch you, [A.M.]?

[VICTIM]:      On my upper private part.

[PROSECUTOR]:      Okay. On your breasts?

[VICTIM]:      Yes.

[PROSECUTOR]:      [W]ould he touch you under your clothes or over your clothes?

[VICTIM]:      Under.

[PROSECUTOR]:      What did he touch you with?

[VICTIM]:      His hand.

[PROSECUTOR]:      Do you remember how long?

[VICTIM]:      No.

[PROSECUTOR]:      What would he do with his hands when he was touching your upper private?

[VICTIM]:      He would rub me.

While the two were playing the game in the garage, Defendant pulled his pants down and showed his penis to the victim. The victim described defendant's garage as being "empty," without "cars or other stuff like that." The victim further testified that sometimes when she and Defendant were sitting on Defendant's front porch, he would pat or rub her thighs. A few times she told him to stop and he would stop, however, "the next day [they would] see each other and he'd keep doing it." Sometimes when they sat on Defendant's porch, Defendant would wear only his boxers and his penis "would just pop out." This happened more than once. Once, when the victim's mother called her home to get ready for dinner and take a shower, Defendant told her, "Well, you can take [a shower] with me." She refused. On cross-examination, the victim denied that she ever climbed or played in any of the trees in Defendant's back yard because they were too tall.

Chris Line, an investigator with the Knoxville Police Department, testified that he interviewed Defendant. Defendant provided the following voluntary written statement during the interview in response to the allegations:

> I helped [A.M.] out of my tree, and my hands may have touched her breast. I said I was sorry. I have touched her legs while sitting in my truck coming from the fair, and while sitting on my back porch.

> While we were sitting at my kitchen table [A.M.] was looking under the table, I then realized that I wasn't wearing any underware [sic], because I was about to take a shower before they came over. I did go and put on a pair of underware [sic] right away.

> I have patted her on her butt before. I never thought anything about that action being anything but funny at the time.

> I did joking ask her if she wanted to wash my back. Only because she was in the habit of coming over to my house just before I am about to shower. I shower everyday between 4:30 & 5:00. Always before my wife returns home from work at 5:30.

> She asked me about three weeks ago if she was my favorite girl. I thought for awhile and said no. That [there] was another girl I know from the arcade named Karen. There is no one named Karen. I made her up to make [A.M.] not think she was my special friend. That's maybe why she got mad at me.

There were several different offenses described by the victim which fit the time parameter of the indictment. Therefore, after the conclusion of the State's proof, the State made an election as to which offense to submit to the jury. The offense selected was the one "in the garage, playing truth or dare, that [Defendant] put his hands up inside her shirt and rubbed on her breasts." Defendant's counsel then asked the court to reconsider Defendant's motion to prevent the State from introducing Defendant's prior record. The court held that, pursuant to Rule 609 of the Tennessee

Rules of Evidence, it "would not allow the Attorney General to refer to [Defendant's] prior record if he wishes to take the stand . . . because [the court believes] that the . . . prejudicial effect would outweigh the probative value." The Court then denied Defendant's motion for acquittal.

Defendant's wife, Beverly Knoblock, testified that she and Defendant had been married for twenty-six years. They had no children, but she had children from a previous marriage. She described Defendant as a husband who was "kind, considerate, a good provider, and very helpful." She testified that A.M. and her sister came to their house quite often, and they usually came over together. Most of the time she was there, although sometimes only her husband was there. She further testified that she "really [had] no basic knowledge about the charges against [Defendant]."

The final witness to testify at trial was Defendant. On direct examination, Defendant denied ever putting his hand underneath A.M.'s shirt or exposing himself to her in the garage. He further testified that his garage is full because it is used as a storage area and for his wife's crafts, and there is only "maybe a small area you can walk from one end to the other." He stated that the only time A.M. would have ever seen his penis was on one occasion when A.M. and her sister came over and he was wearing a robe because he was preparing to take a shower. According to Defendant, they were seated at the kitchen table, and A.M. was crawling under the table while he was talking with her sister. When he realized what was happening, he "got up, went and put on some underwear." Defendant explained that a few times he had "smack[ed] [A.M.] on her butt. . . like football players when they smack each other" when he was "shooing her home" a few times. He also explained that he had touched her breasts once "inadvertently" when he helped her out of the dogwood tree that she had climbed in his back yard, but that he had apologized. He denied ever touching the victim in a manner that he would consider inappropriate and denied ever touching the victim "with any kind of sexual intent." He stated that, because of heart problems, he had been impotent and unable to "do any sexual acts at all" for four years.

Prior to cross-examination, outside the presence of the jury, the State argued that it should be allowed to question Defendant about his prior conviction for aggravated sexual battery under Rule 404(b) of the Tennessee Rules of Evidence. After hearing arguments from counsel and taking a brief recess, the court ruled:

> You presented me with a tough decision. . . . On the one hand were I to allow you to ask [Defendant] about his prior conviction, obviously, the prejudicial effect to his case today would be significant.

> On the other hand, [Defendant] and his wife through their testimony and [Defendant]'s to Officer Line, I believe, have raised the issue of motive and intent. And I would note that the only situation in which [Defendant] does not claim mistake but claims that this never happened at all–there was no activity–was the particular instant [the State] elected. His testimony, of course, comes after the election that [the State] made in open court. (Pause)

I'm obviously struggling with it.

* * *

I would agree that there are a number of places in the proof. And having to do with the time frame that was testified to [by the victim] where we now have proof based upon the testimony raised by [Defendant] of mistake, absence of motive, absence of intent, are things also raised by [Defendant's counsel] in his opening statement as well. Though I think it really has nothing to do with the raising of the issue about the polygraph exam [by Defendant's counsel], and I think we just effectively dealt with that and I think that's done. I don't think that is the issue. But– (Pause)

What we've done as of this point–and it's come through [Defendant]'s testimony, and it's his testimony that's raised it. . . . General, I'm going to allow you to ask the question and the question only, not go into any detail. I will allow you to enter into this because I think it's been brought up. I, quite frankly, have a great deal of reservation about allowing you to do it because I think that there is great prejudicial effect to [Defendant]. I think the probative value at this point as to whether or not there was motive, intent, all of those things that we've talked about, is there. . . . So I will allow you to ask limitedly about [Defendant]'s prior record.

During cross-examination, Defendant admitted that he taught the victim how to play the game of truth or dare and that they had played together two or three times. However, he could not remember what questions were asked during the game. He also admitted that he "patted" the victim's thigh. Finally, Defendant admitted that he had previously been convicted of aggravated sexual battery:

> [PROSECUTOR]: I've got one last question for you, [Defendant]. Are you the same [person] who on May the 6th of 1993 was convicted of aggravated sexual battery?
>
> [DEFENDANT]: Yes.
>
> [PROSECUTOR]: And did that involve a minor under the age of thirteen?
>
> [DEFENDANT]: Yes.

Defendant was found guilty of aggravated sexual battery and sentenced to serve twelve years incarceration at 100 percent. Defendant filed a motion for new trial, which the court subsequently denied.

**II. Analysis**

On appeal, Defendant argues that the trial court erred by allowing evidence of his prior conviction for aggravated sexual battery to be admitted at trial. The State argues, initially, that Defendant's appeal should be dismissed because it was untimely filed. According to Rule 4(a) of the Tennessee Rules of Appellate Procedure, a notice of appeal must be filed within thirty days of the judgment from which the appeal is taken. Defendant's motion for new trial was denied on June 23, 2004, but he did not file a notice of appeal until August 12, 2004. Although Defendant's notice of appeal was, in fact, untimely filed, in the interest of justice, we waive the timely filing of a notice of appeal and will therefore consider the merits of Defendant's argument. *See* Tenn. R. App. P. 4(a); *see also Crittenden v. State*, 978 S.W.2d 929, 932 (Tenn. 1998).

Although both Defendant and the State argue that the trial court allowed the evidence under Tennessee Rule of Evidence 609, the record establishes that the aggravated sexual battery conviction was admitted under Tennessee Rule of Evidence 404(b). Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait." However, such evidence may be admissible for other purposes. Prior to allowing such proof, the trial court must conduct a jury-out hearing, determine whether there is a material issue other than conduct conforming with a character trait, and must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice. Tenn. R. Evid. 404(b); *State v. West*, 844 S.W.2d 144, 149 (Tenn. 1992)

Generally, Rule 404(b) is a rule of exclusion. *State v. Jones*, 15 S.W.3d 880, 894 (Tenn. Crim. App. 1999). However, the generally recognized exceptions allow evidence offered to prove motive, identity, intent, absence of mistake, opportunity, or a common scheme or plan. *Bunch v. State*, 605 S.W.2d 227, 229 (Tenn. 1980). Our standard of review of the trial court's determinations under Rule 404(b) is whether the trial court's ruling was an abuse of discretion. *State v. Dubose*, 953 S.W.2d 649, 652 (Tenn. 1997). An appellate court should find an abuse of discretion when it appears that the trial court "applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining." *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999); *see also State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997).

In the case *sub judice*, the trial court determined, following a jury-out hearing, that Defendant's intent was a material issue and that Defendant's prior conviction for aggravated sexual battery involving a minor under the age of thirteen was admissible for the purpose of proving Defendant's intent and motive when touching the victim. It is apparent from the trial court's ruling that the court weighed the probative value of this prior conviction as to Defendant's intent against its prejudicial effect and concluded that the prejudicial effect did not outweigh the probative value.

We agree with the trial court that Defendant's intent was a material, contested issue at trial, and therefore Defendant's prior conviction was relevant as to a material issue other than to show action in conformity with a character trait. The required culpable mental state for aggravated sexual battery is intent. *Ruff v. State*, 978 S.W.2d 95, 97 (Tenn. 1998). To prove aggravated sexual battery,

the State must present evidence that the defendant intentionally touched the intimate parts of the child victim and that such touching was for the purpose of sexual gratification. Tenn. Code Ann. §§ 39-13-501, -504. The victim testified that Defendant "dared" her to allow him to touch her breasts during a game, and that he then put his hand under her shirt and rubbed her breast. Defendant, on the other hand, testified that, although he had touched the victim's breasts, he did so "inadvertently" when helping her out of a tree, and that he never touched the victim with any kind of "sexual intent." On cross-examination, Defendant admitted that he had, in fact, taught the victim how to play the game of "truth or dare", but he denied that his playing "truth or dare" with the victim was anything but "innocent."

The rationale underlying Rule 404(b)'s exclusion of evidence of a defendant's prior bad acts is that admission of such evidence carries with it the inherent risk of the jury convicting the defendant of a crime based upon his bad character or propensity to commit a crime, rather than the conviction resting upon the strength of the evidence. *State v. Rickman*, 876 S.W.2d 824, 828 (Tenn. 1994). The risk is greater when the defendant's prior bad acts are similar to the crime for which the defendant is on trial. *Id.*; *see also State v. McCary*, 922 S.W.2d 511, 514-15 (Tenn. 1996). Based on the facts of the case at bar, however, we cannot conclude that the prejudicial impact of the evidence of Defendant's prior conviction for aggravated sexual battery outweighed its probative value. The trial court prevented the State from mentioning the conviction at all during closing arguments. Accordingly, the trial court did not abuse its discretion by admitting the evidence.

Finally, Defendant asserts that the trial court failed to instruct the jury that evidence of his prior conviction "may not be considered as to the defendant's guilt or innocence." Defendant did not request the instruction at the time the State asked Defendant about his prior conviction or when the trial court ruled the conviction was admissible. Also, following the trial court's reading of the jury charge at the conclusion of the trial, the following took place:

> THE COURT: Are there any additions or corrections, counsel?
>
> [PROSECUTOR]: No.
>
> [DEFENSE COUNSEL]: No.

Defendant failed to contemporaneously object to any omission in the jury instructions, did not request the instruction at the time the evidence was admitted, and failed to include the issue in his motion for new trial. Accordingly, Defendant has failed to preserve the issue for appeal and we will treat the issue as waived. *See* Tenn. R. App. P. 3(e).

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, JUDGE

-7-